UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Cathy L. Waldor |
| v. | : | Mag. No.  12-7286 |
| SHAWN L. CRAIG | : | **CRIMINAL COMPLAINT** |
| | : | |

I, George Dietz, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

I further state that I am a Special Agent with the United States Department of Housing and Urban Development, Office of Inspector General and that this Complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

George Dietz
Special Agent, United States Department of Housing
and Urban Development, Office of Inspector General

Sworn to before me and
subscribed in my presence,
November 1⁊ , 2012, at Newark, New Jersey

HONORABLE CATHY L. WALDOR
UNITED STATES MAGISTRATE JUDGE        Signature of Judicial Officer

1

## COUNT ONE
(Mortgage Fraud)

From at least in or about December 2010 to in or about July 2011, in Essex County, in the District of New Jersey, and elsewhere, defendant

SHAWN L. CRAIG

knowingly and intentionally made and caused to be made to Wells Fargo Bank a material false statement for the purpose of influencing the actions of Wells Fargo Bank upon a loan.

In violation of Title 18, United States Code, Section 1014.

## COUNT TWO
(Bank Fraud)

From at least in or about December 2010 to in or about July 2011, in Essex County, in the District of New Jersey, and elsewhere, defendant

SHAWN L. CRAIG

did knowingly and intentionally execute, and attempt to execute, a scheme and artifice to defraud financial institutions, namely Wells Fargo Bank and Citibank, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, financial institutions relating to the victim referred to in Attachment B, by means of materially false and fraudulent pretenses, representations and promises.

In violation of Title 18, United States Code, Section 1344.

## COUNT THREE
(Theft of Public Money)

From at least in or about November 2010 to in or about July 2011, in Essex County, in the District of New Jersey, and elsewhere, defendant

SHAWN L. CRAIG

did knowingly and intentionally embezzle, steal, purloin, and convert to her own use and the use of others, vouchers, money and things of value of the United States and of a department or agency thereof, namely benefits from the United States Social Security Administration, and did receive, conceal and retain the same with intent to convert them to her own use and gain, knowing them to have been embezzled, stolen, purloined and converted.

In violation of Title 18, United States Code, Section 641.

ATTACHMENT B

I, George Dietz, am a Special Agent with the United States Department of Housing and Urban Development Office of Inspector General ("HUD-OIG"). I have knowledge of the following facts based upon both my investigation and discussions with other law enforcement personnel and others. Because this affidavit is being submitted for the sole purpose of establishing probable cause to support the issuance of a complaint, I have not included each and every fact known concerning this matter. Where statements of others are set forth herein, these statements are related in substance and in part.

1.  At all times relevant to this complaint:

    A.  Shawn L. Craig ("SHAWN CRAIG) resided in West Orange, New Jersey. SHAWN CRAIG was unemployed during that time.

    B.  The victim was a resident of East Orange, New Jersey.

    C.  SHAWN CRAIG and her husband (together, the "CRAIGS") became the attorneys-in-fact for the victim, pursuant to a general power of attorney executed by the CRAIGS and the victim on or about November 10, 2010. As the attorneys-in-fact, the CRAIGS had a fiduciary responsibility to the victim and were responsible for facilitating the payment of the victim's living expenses with the victim's assets.

    D.  Wells Fargo Bank located in East Orange was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation, Certificate No. 3511.

    E.  Wachovia Bank located in East Orange was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation, Certificate No. 33869.

    F.  Wachovia Bank was formally incorporated into Wells Fargo Bank in or about December 2008. The Wachovia brand was officially retired in or about October, 2011.

2.  According to records obtained from the United States Social Security Administration ("SSA"), beginning in or about March 2010, the victim was entitled to monthly widow's benefits from the Social Security Administration ("SSA") due to the death of her husband.

3.  In or about November 2010, SSA sent the victim a payment of approximately $14,879 representing SSA benefits from March 2010 through November 2010. The victim also was due to receive monthly payments from SSA of approximately $1,828

3

starting in or about December 2010. Bank records reflect that the initial $14,879 in SSA benefits was deposited into the victim's bank account ("Bank Account") in Orange, New Jersey on or about November 10, 2010. On or about November 9, 2010, the Bank Account had a balance of approximately $782.00.   Accordingly, the balance of the Bank Account after the SSA benefits were deposited on or about November 10, 2010, was approximately $15,661. The victim and her husband had maintained the Bank Account for over a decade.

       4.     According to witness interviews and bank records, in or about November, 2010, SHAWN CRAIG presented a signed general power of attorney to the Bank in Orange, New Jersey to gain access to the victim's Bank Account. The Bank honored the general power of attorney but noted that based on the language of the general power of attorney, both CRAIGS had to sign for any withdrawals from the account that occurred if the victim was not present.

       5.     According to bank records and witness interviews, on or about November 16, 2010, SHAWN CRAIG appeared at the Bank and negotiated a check payable to SHAWN CRAIG and issued on the victim's account in the amount of $7,552.54 with the phrase "Cashier's check-transfer & landscaper" written in the memo portion of the check. The check was purportedly endorsed by the victim.

       6.     Records reflect that SHAWN CRAIG then converted the $7,552.54 check into at least two cashier's checks, one in the approximate amount of $5,000 made payable to the victim and another in the approximate amount of $1,552.54 made payable to a university where a child of the CRAIGS attended school. Records further indicate that the $5,000 cashier's check later was deposited into a Wachovia bank account in East Orange, New Jersey opened by SHAWN CRAIG in the name of the victim with the general power of attorney, referred to herein in paragraph 9.

       7.     Bank records demonstrate that in or about November 2010, money from the Bank Account, which was primarily funded by the SSA Benefits, was used to pay the personal living expenses associated with the CRAIGS, such as their automobile insurance premium in the amount of approximately $1,536 and their cell phone bill in the amount of approximately $563.86.

       8.     On or about November 27, 2010, witness interviews and bank records reflect that SHAWN CRAIG appeared at the Bank in Orange, New Jersey to negotiate a check payable to Cash and issued on the victim's account in the amount of approximately $5,783. The check only was endorsed by SHAWN CRAIG and bank employees insisted that both attorneys-in-fact sign the check. Witness interviews and bank records reflect that SHAWN CRAIG's husband appeared in the bank to provide the second signature. On that day, SHAWN CRAIG expressed to bank employees that she was unhappy with the requirement that both she and her husband sign for withdrawals and she threatened to close the account.

       9.     Bank records indicate, however, that as early as on or about November 10, 2012, SHAWN CRAIG opened a power of attorney account with the general power of attorney at Wachovia Bank in East Orange, New Jersey ("Wachovia Account"). Bank records obtained during the investigation reveal that SHAWN CRAIG presented identification and both CRAIGS signed signature cards to open the account. Approximately $10,048 (including the approximately $5,000 check referred to in paragraph 6) was deposited into the Wachovia

Account in or about November 2010.

10.     SSA records reflect that in or about December 1, 2010, SSA received changes to the victim's account information via internet input directing SSA to direct deposit the victim's social security benefit checks into the Wachovia Account. SSA records and bank records indicate that beginning in or about December 2010 through in or about July 2011, SSA direct deposited the victim's SSA Benefits into the Wachovia Account.

11.     Bank records also indicate that beginning in or about November 2010, SHAWN CRAIG began using the debit card issued to her in connection with the Wachovia Account for personal living expenses related the CRAIGS, including shopping at a variety of establishments including Homegoods, Shoprite, CVS Pharmacy, Red Lobster, Starbucks, Sprint Wireless and Comcast Cable. Bank records reflect that between in or about November 2010 and January 2011, approximately $24,000 was debited from the Wachovia Account through cash withdrawals, cashed checks, and purchases. Only a small percentage of those proceeds were used to pay expenses for the victim.

12.     In or about December 2010, the CRAIGS submitted an application to Wells Fargo Bank for a Home Equity Conversion Mortgage ("Reverse Mortgage"), a loan insured by the Federal Housing Administration, as the attorneys-in-fact for the victim. The application was completed through a loan officer and signed by SHAWN CRAIG as the attorney-in-fact. Wells Fargo Bank required that the CRAIGS submit identification along with the general power of attorney. SHAWN CRAIG submitted her driver's license and her husband submitted his state identification card as proof of identity with the general power of attorney and the loan application.

13.     The closing for the Reverse Mortgage was scheduled to occur on or about February 21, 2011 at the victim's home in East Orange, New Jersey. Based on witness interviews and documents obtained during the investigation, present at the closing on or about February 21, 2011 was a title agent from Heritage Abstract Company. The agent presented the victim with a specific power of attorney that the victim had to sign in order for the CRAIGS to sign the remaining closing documents. The victim refused to sign the specific power of attorney for the closing to proceed and the title agent left the victim's home without the specific power of attorney or the victim's signature on any of the closing documents.

14.     Based on witness interviews and documents obtained during the investigation, several hours after the attempted closing, the CRAIGS met with the title agent at his office in Morristown, New Jersey. The CRAIGS presented the specific power of attorney to the title agent and claimed that the victim had signed the document after the title agent left the victim's home. The specific power of attorney purportedly bore the signature of the victim, however, the victim had not signed the form. Indeed, records and interviews conducted during the investigation reveal that the signature on the specific power of attorney was a forgery. The signature appearing on the specific power of attorney does not look similar to other signatures of the victim.

15.     Accepting the specific power of attorney as a valid document, the title agent allowed SHAWN CRAIG to sign the remaining closing documents and the Reverse Mortgage was consummated.

16.     Bank records obtained during the investigation indicate approximately $76,690 from the Reverse Mortgage was credited to the Wachovia Account on or about February 25, 2011. The money from the Reverse Mortgage was deposited into the Wachovia Account, along with the funds that were automatically deposited from the SSA. Bank records reflect that between in or about February 2011 and May 2011 SHAWN CRAIG used tens of thousands of dollars from the Wachovia Account for personal expenses related to the CRAIGS such as, Gucci bags, riding boots, travel to Florida and Washington DC, hotel stays in New Brunswick, New Jersey and Atlantic City, New Jersey, large purchases at Costco, gym membership fees, and PSE&G payments for the CRAIGS' home in West Orange, New Jersey, among other things.

17.     In or about June 2011, pursuant to a new general power of attorney appointing someone else to take charge of the financial affairs of the victim executed on June 15, 2011, the CRAIGS were terminated as the attorneys-in-fact for the victim. Official notice of the termination of the general power of attorney was given to SHAWN CRAIG on or about June 16, 2011. SHAWN CRAIG, however, continued to use proceeds from the Wachovia Account for personal expenses related to the CRAIGS after that date, despite having been given notice of the termination.

18.     Bank records reflect that on or about June 21, 2011, SHAWN CRAIG presented the invalid general power of attorney at a Citibank in West Orange, New Jersey to open a power of attorney account in the name of the victim. SHAWN CRAIG used approximately $5,000 from the Wachovia Account to open the Citibank Account. During the application process for the account, SHAWN CRAIG requested a debit card for the account, which was mailed to the CRAIGS' West Orange, New Jersey address. The debit card was later activated and used on several purchases.

19.     In or about July 2011, the victim demanded an accounting of what the CRAIGS had done with the victim's assets. In and about July 2011, the CRAIGS remitted a check to the victim for approximately $23,500 from the Citibank Account. That amount, however, was well below the approximately $126,000 in funds that SHAWN CRAIG converted to her own use from the victim's accounts.